{¶ 28} I disagree.
 {¶ 29} Judge Painter's approach is consistent with the purpose behind UM/UIM coverage. "The purpose of UM/UIM coverage is to protect persons from losses which, because of the tortfeasor's lack of liability coverage, would otherwise go uncompensated." 58 Ohio Jurisprudence 3d (2005) 435-36, Insurance, Section 999. It is undisputed that, despite Moreo's immunity from liability, the City is liable for damages arising from Moreo's negligent acts within the course of his employment with the City. Also, there has been no *Page 9 
argument that the City is unable to pay such damages. Thus, it appears that the City of Dayton is able to compensate Plaintiff for his damages and there does not appear to be any risk of Plaintiff going uncompensated due to a lack of liability coverage on the part of the City of Dayton. Therefore, forcing State Farm to pay damages to Plaintiff does not appear to fit within the purpose of UM/UIM coverage.
 {¶ 30} The trial court and majority reject Judge Painter's common sense approach and find that the City was uninsured within the meaning of the uninsured motorist statute and State Farm's insurance policy with Mr. Rogers. Pursuant to the version of R.C. 3937.18(K) applicable to the present dispute, a motor vehicle is excluded from the definition of "uninsured motor vehicle" where the motor vehicle is self-insured withinthe meaning of the financial responsibility law of the state in which the motor vehicle is registered. The insurance policy between Plaintiff and State Farm provides a similar exclusion from the definition of uninsured motor vehicle. State Farm argues that the City of Dayton's motor vehicle is excluded from the definition of uninsured motor vehicle because the City of Dayton is self-insured. On the other hand, the City of Dayton argues that it is not self-insured within the meaning of the financial responsibility law of Ohio.
 {¶ 31} "`Self-insurance' is the retention of the risk of loss by the one bearing the original risk under the law or contract. It is the practice of setting aside a fund to meet losses instead of insuring against such through insurance, self-insurance being the antithesis of insurance, for while insurance shifts the risk of loss from the insured to the insurer, the self-insurer retains the risk of loss imposed by law or contract." 57 Ohio Jurisprudence 3d (2005) 317, Insurance, Section 247. The City concedes that it is self-insured in the sense that it does not purchase automobile insurance and it does set aside *Page 10 
certain monetary amounts each year in its budget for the payment of claims against the City.
 {¶ 32} The City's decision not to purchase insurance is perfectly acceptable. R.C. 2744.08(A)(2)(a) provides that a "political subdivision may establish and maintain a self-insurance program relative to its and its employees' potential liability in damages in civil actions for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or any of its employees in connection with a governmental or proprietary function. The political subdivision may reserve such funds as it deems appropriate in a special fund that may be established pursuant to an ordinance or resolution of the political subdivision. . . ."
 {¶ 33} The City of Dayton's self-insurance program is provided for in its Municipal Code. Pursuant to Sec. 36.203 of the Dayton Municipal Code, judgments on personal injury claims are limited to funds that have been "specifically appropriated on an annual basis for payment of claims and judgments." Further, Sec. 36.204 requires the City Manager to submit annually to the City Commission a recommended appropriation for payment of claims and judgments. In determining the amount of funds to be appropriated, the City Manager and Commission may consider the list of non-exclusive information set forth in Sec. 36.204(A)-(I).
 {¶ 34} The trial court held and the majority concurs that being self-insured in this "practical sense" does not necessarily mean that the City is self-insured in the relevant, legal sense. State Farm disagrees, arguing that the Supreme Court's holding in Grange Mut. Cas.Co. v. Refiners Transport Terminal Corp. (1986), 21 Ohio St.3d 47, supports a finding that the City is self-insured rather than uninsured for purposes of R.C. 3937.18(K) *Page 11 
and the insurance policy. The City responds that whether it is self-insured in the practical sense is irrelevant, because the inquiry necessitated by R.C. 3937.18(K) and the insurance policy is whether the City is self-insured within the meaning of the financialresponsibility law. The City contends that the motor vehicle driven by Moreo cannot be considered self-insured within the meaning of the financial responsibility law of Ohio, because the City does not have a certificate of self-insurance under Ohio's Financial Responsibility Act ("FRA"), Chapter 4509.01, et seq.
 {¶ 35} Under the FRA, "[a]ny person in whose name more than twenty-five vehicles are registered in this state may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the registrar of motor vehicles. . . ." R.C. 4509.72(A). "The registrar shall issue a certificate of self-insurance upon the application of any such person who is of sufficient financial ability to pay judgments against him." R.C. 4509.72(B). In sum, the registrar is required to issue a certificate of self-insurance to any person who has more than twenty-five vehicles registered in Ohio, is financially able to pay judgments against him, and requests the certificate. It is undisputed that the City of Dayton is exempt from the FRA. R.C. 4509.71. It is similarly undisputed that the City of Dayton does not have a certificate of self-insurance issued by the registrar. The City argues that these two uncontested facts are sufficient to resolve this appeal in its favor because the lack of a certificate of self-insurance prevents State Farm from establishing that the City is self-insured within the meaning ofthe financial responsibility law. I disagree.
 {¶ 36} The relevant inquiry under R.C. 3937.18(K)(3) is not whether the City of Dayton has a certificate of self-insurance and is in fact self-insured under the FRA. Indeed, the City would have no reason to request a certificate of self-insurance where the *Page 12 
City is exempt from the very law that requires a person to obtain the certificate of self-insurance. Rather, the relevant question is whether the City is self-insured within the meaning of the FRA. Thus, the key inquiry is whether the City meets the requirements for a certificate of self-insurance. A review of the statutory requirements reveals that the City does meet the relevant requirements.
 {¶ 37} Pursuant to R.C. 4509.72(B), the registrar must issue a certificate of self-insurance to any person who has more than twenty-five vehicles registered in Ohio, requests the certificate, and is financially able to pay judgments against him. It is undisputed that the City has more than twenty-five vehicles registered in Ohio. Moreover, it is undisputed that the City is financially able to pay judgments against it. Indeed, the City concedes that it sets aside certain funds each year to pay judgments against it. Moreover, the City's exemption from the FRA is based on the presumption given to a political subdivision of the state that the subdivision is financially responsible. Thus, I would conclude that the City is financially responsible and qualified to receive a certificate of self-insurance.
 {¶ 38} The presumption in R.C. 4509.71 that the City of Dayton is financially responsible is supported by the City's Municipal Code. "Proof of financial responsibility" is defined by statute as "proof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of such proof, arising out of the ownership, maintenance, or use of a motor vehicle in the amount of twelve thousand five hundred dollars because of bodily injury to or death of one person in any one accident,. . . ." R.C. 4509.01(K). The City of Dayton has created a limitation of its liability relating to damages recoverable in an action against the city for personal injury or property damage *Page 13 
arising out of a single occurrence, or sequence of occurrences, in a tort action. The limitation is a sum not in excess of $250,000 per person and $500,000 per occurrence. Dayton Municipal Code, Sec. 36.205(B)(2). The City of Dayton, through its Municipal Code, clearly contemplated paying judgments in amounts equal to or exceeding the $12,500 that is required under the FRA to show proof of financial responsibility. In short, the City of Dayton is financially responsiblewithin the meaning and purpose of the FRA.
 {¶ 39} The only thing preventing the City of Dayton from having a certificate of self-insurance under the FRA is that the City has not requested such a certificate. Once again, it is understandable why the City has not requested a certificate-it is unnecessary because the City is exempt from the FRA. However, the fact that the City did not request a certificate that it was not legally obligated to request does not mean that the City is not self-insured within the meaning and spirit of the financial responsibility law. On the contrary, I would find that the City's practice of annually setting aside funds to pay tort judgments constitutes being self-insured and financially responsible within the meaning and purpose of the financial responsibility law. To hold otherwise would allow the City of Dayton to use the fact that it is presumed financially responsible under the FRA to act financially irresponsible in situations where its employees are involved in automobile accidents.
 {¶ 40} The City of Dayton argues that our prior decisions inJennings v. City of Dayton (1996), 114 Ohio App.3d 144, and Anderson v.Nationwide Ins. Co. (Sept. 19, 1997), Montgomery App. No. 16309, require us to find that the City of Dayton is uninsured. I disagree. InJennings, the plaintiff was injured in an accident with a motor vehicle owned by the City of Dayton and driven by a city employee. At the time of the accident, the City of Dayton was not covered by a motor vehicle liability insurance policy. Rather, the City was *Page 14 
self-insured under the provisions of R.C. 2744.08(A)(2)(a). Based on a review of the caselaw, we found that "the trend in the Supreme Court and in this court is to define self-insurers as uninsured and to maximize the uninsured motorist protection afforded to insured persons." Jennings, 114 Ohio App.3d at 148. Consequently, we held that "`self-insurance' is the legal equivalent of no insurance for purposes of the distribution of uninsured motorist benefits in accordance with R.C. 3937.18." Id. at 150. Our holding was based on a reading of the 1996 version of R.C. 3937.18, which did not include an exclusion for "self-insurers." Subsequent to our decisions in Jennings andAnderson, however, the General Assembly revised R.C. 3937.18, providing for an exclusion of self-insurers from the definition of uninsured motor vehicle. Therefore, Jennings and Anderson are inapposite.
 {¶ 41} Finally, the City of Dayton argues that the public policy behind R.C. 2744.05(B) supports a finding that the City of Dayton is uninsured. R.C. 2744.05(B) provides that "If a claimant receives or is entitled to receive benefits for injuries or loss allegedly incurred from a policy or policies of insurance or any other source, the benefits shall be disclosed to the court, and the amount of the benefits shall be deducted from any award against a political subdivision recovered by that claimant. No insurer or other person is entitled to bring an action under a subrogation provision in an insurance or other contract against a political subdivision with respect to such benefits." According to the City of Dayton, R.C. 2744.05(B) serves two purposes: "1. To `conserve the fiscal resources of political subdivisions by limiting their tort liability'; and 2. To `permit injured persons who have no resource of reimbursement for their damages, to recover for a tort committed by [a] political subdivision.'" Appellee's Brief, p. 13 (quoting Menefee v.Queen City Metro *Page 15 
(1990), 49 Ohio St.3d 27, 29). The City of Dayton's reliance on R.C. 2744.05(B) is misplaced. R.C. 2744.05(B), by its own terms, is confined to situations where the claimant is entitled to benefits under his or her insurance policy. In the present case, Plaintiff is not entitled to uninsured motorist benefits under his insurance policy with State Farm, because the City of Dayton is self-insured. Therefore, the provisions of R.C. 2744.05(B) are inapplicable.
 {¶ 42} I would conclude that the trial court erred in holding that the motor vehicle driven by Moreo was uninsured. In choosing to be self-insured for the purposes of the FRA, the City obligated itself to pay. I would sustain State Farm's assignments of error and would reverse the judgment of the trial court.